IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| V3 WORLD MANAGEMENT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SYNERGY WORLDWIDE, INC.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:16-cv-323-DB<br><br>District Judge Dee Benson |

Before the court are two motions for summary judgment: a Motion for Partial Summary Judgment filed by Plaintiff (Dkt. No. 58) and a Motion for Summary Judgment filed by Defendant. (Dkt. No. 57.) The Motions have been fully briefed by the parties, and the court has considered the facts and arguments set forth in those filings. Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the Court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. DUCivR 7-1(f).

Background

Synergy Worldwide, Inc. ("Synergy") is a multi-level marketing company that sells nutritional supplements. Synergy sells its products through distributors, sometimes referred to as "Team Members," who earn revenue by either reselling products directly to consumers or by recruiting other distributors to their "downline." Synergy provides distributors with Policies and Procedures, which "constitute a complete contract (the 'Contract') between independent Team

Members and Synergy." (Synergy Worldwide Policies & Procedures (the "Policies and Procedures"), Introduction.[1])

V3 World Management, Inc. ("V3") is a corporation solely owned by Bernard Feldman. V3 purchased an established Synergy distributorship in 2011 for a substantial sum. Since that time, V3 has not sold products directly to consumers or recruited new distributors to its downline. Rather, V3 has continued to receive substantial and consistent revenue from the previously established downline. V3 was a distributor for Synergy until its distributorship was terminated by Synergy on March 1, 2016.

Mr. Feldman is also the sole owner of another entity, HealthBanc International LLC ("HealthBanc"). In September of 2006, HealthBanc entered into a Royalty Agreement with Synergy, in which HealthBanc sold Synergy its "Greens Formula" in exchange for royalties on sales of Greens Formula products manufactured and sold by Synergy. In February of 2016, HealthBanc brought suit against Synergy for failure to pay royalties allegedly owed to it under the parties' agreement. *See HealthBanc Int'l v. Synergy Worldwide,* No. 2:16-cv-135-JNP-PMW.

About a week after HealthBanc filed suit against Synergy, Synergy terminated V3's distributorship by letter, asserting that V3 had "failed to comply with the requirements of the Synergy Code of Ethics" and had engaged in "conduct that is detrimental to Synergy's reputation and business." The letter cited to several sections of the Policies and Procedures, including

---

[1] In its Opposition to Synergy's Motion for Summary Judgment, V3 argues that Synergy has failed to show that the 2015 Policies and Procedures produced by Synergy are applicable to this 2011 distributorship. The court finds that V3 has waived that argument by relying on the 2015 policies in its Motion for Preliminary Injunction. And, in any event, the previous version of the Policies and Procedures contained the same contract provisions relevant to this dispute, including the Code of Ethics, Section 3.4 relating to a "beneficial interest", Section 4.1 relating to unethical business practices, Section 8.5 relating to involuntary termination, and Section 8.7 relating to termination for litigation against Synergy. For these reasons, the court's references to the Policies and Procedures are to the 2015 version.

Section 4.1 ("Any action which may cause Synergy or its Members the loss of reputation, or that is detrimental to Synergy's business, will be considered unethical business practice and will be grounds for disciplinary action, including termination of Membership"); 8.5 ("Involuntary Termination…Synergy has the right to take quick and decisive action in limiting or terminating a Team Membership that is found in violation of the Policies and Procedures…."); and 8.7 ("Litigation…If there exists litigation, or other significant dispute, in which the interests of a Team Member are adverse to the interests of Synergy, Synergy may, upon written notice to the Team Member, terminate or suspend the Membership of such Team Member if Synergy, in its sole discretion, determines that such termination or suspension is desirable to protect its business interests[.]") (Dkt. No. 75-14.)

Discussion

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

*Plaintiff's Motion for Partial Summary Judgment*

V3 moves for partial summary judgment on the basis of the judicial proceedings privilege. V3 argues that HealthBanc's conduct in filing a lawsuit was subject to an "absolute

privilege" and, as such, cannot lawfully form the basis of Synergy's termination of V3's distributorship.

"Utah's judicial proceedings privilege has broad underlying principles." *Moss v. Parr Waddoups Brown Gee & Loveless*, 2012 UT 42, ¶ 30, 285 P.3d 1157, 1165. The purpose of the privilege is to "to promote the integrity of the adjudicatory proceeding and its truth finding processes." *Pratt v. Nelson,* 2007 UT 41, ¶ 27, 164 P.3d 366 (internal quotation marks omitted). The privilege applies to litigation statements and conduct during every stage of the litigation process. *Moss*, 2012 UT 42, ¶¶ 30-35. The privilege is of "extraordinary scope," tempered by "the court's inherent authority [to] provide adequate safeguards…." *Id.* at ¶ 38.

The court finds that the judicial proceedings privilege applies here to prohibit Synergy from asserting that the filing of a lawsuit is a sufficient basis to terminate its contract. Synergy has argued that pursuant to the Policies and Procedures, it may deprive a Team Member of its distributorship and related contractual benefits regardless of the merit of the lawsuit filed against it. In the interests of justice and the integrity of the judicial system, the court cannot enforce such a position. The judicial proceedings privilege bars Synergy from arguing that HealthBanc's filing of a lawsuit was an appropriate basis for the termination of V3's distributorship.

*Defendant's Motion for Summary Judgment*

Synergy moves for Summary Judgment on the basis that it had a contractual right to terminate V3's distributorship and, as such, V3 has no claim for breach of contract or the implied covenant of good faith and fair dealing for its termination. Synergy relied, at least in part, on HealthBanc's filing of a lawsuit against it in terminating V3's distributorship. Having determined that the litigation privilege prohibits Synergy from relying on litigation conduct as a

basis for V3's termination, the court finds a genuine issue of material fact as to whether Synergy breached its contract with V3 when it terminated its relationship with V3.

Even if the judicial proceedings privilege were inapplicable, summary judgment would still be inappropriate because there is a dispute as to whether HealthBanc's litigation conduct against Synergy is attributable to V3. The definition of "Team Member" in the Policies and Procedures "includes any person with a beneficial interest in a Synergy Team Membership." (Policies and Procedures, Section 2.) The Policies and Procedures further provide that "[a]ny individual or entity that can be viewed by the company, or by other Team Members, as actively working a specific Synergy Account will be deemed as having a beneficial interest in that account." (*Id.*, Section 3.4.)

Synergy argues that HealthBanc had a beneficial interest in V3 because they are both owned and controlled by the same person—Mr. Feldman. But the relevant portion of the definition of "beneficial interest" requires that HealthBanc be viewed as "actively working" V3's account. "Actively working" is not defined. The undisputed facts show that V3 did not market products or seek additional distributors for its downline, but instead received regular, passive income from its existing downline. It is questionable whether V3 was "actively working" its own account, and even more questionable whether HealthBanc did. Thus, there is a genuine issue of material fact with respect to whether HealthBanc's conduct was a proper reason, pursuant to the Policies and Procedures, to terminate V3's distributorship.

## Conclusion

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is hereby GRANTED and Defendant's Motion for Summary Judgment is hereby DENIED.

DATED this 12th day of February, 2019.

BY THE COURT:

Dee Benson
United States District Judge